LEVINE, J.
 

 The issue presented in this case is whether the interrogating officer’s constant promises became an improper inducement rendering appellant’s statement involuntary. We find, based upon the totality of the circumstances, the confession is involuntary and due process requirements render the statement inadmissible.
 

 Appellant was convicted of sexual battery and lewd or lascivious conduct. The victim, D.R., age fourteen, told her mother that appellant had touched her breasts and digitally penetrated her vagina. The mother called law enforcement who then interviewed appellant. Appellant was read his
 
 Miranda
 
 rights and gave a lengthy statement. At trial, appellant moved to suppress his statements claiming the admissions were not knowingly, freely, and voluntarily given since the interrogating officer’s statement contained impermissible promises of leniency. The trial court denied the motion to suppress. Appellant was convicted as charged, and this appeal ensued.
 

 This court has explained the standard of review as follows:
 

 “A trial court’s ruling on a motion to suppress comes to the appellate court clothed -with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” An appellate court accords a presumption of correctness to the trial court’s ruling on motion to suppress with regard to the trial court’s determination of historical facts, but independently reviews mixed questions of law and fact.
 

 Tengbergen v. State,
 
 9 So.3d 729, 733 (Fla. 4th DCA 2009) (citations omitted). We review appellant’s statement to determine if it was given as a result of improper inducement.
 

 In the statement introduced at trial, appellant confessed to illegal acts after the investigator’s many invocations of offers to help him. Initially, the investigator stated, “Um, if — if something happened and its accidental — then we can work something out. But if it’s something that — cause I don’t see you as a predator, okay. I don’t see you as a guy to go out there and start doing some crazy things.” A little while later, the investigator stated,
 

 Okay. And — if I just want to know what happened. If there’s something that we can fix and we can work with, then that’s what I want to know, okay. I don’t want to sit here and start saying, well you — I’m not accusing you of anything.
 
 *1180
 
 I’m trying to ask you what happened that night because I know, I know that something happened....
 

 Then the investigator stated, “That’s why I’m telling you, I wasn’t there and this— I’m trying to give you the opportunity for you to help yourself so that I can work something out for you.”
 

 A few pages later in the statement, the investigator stated, “That’s what I want to know. At least give me something. Tell me that this is what I did, you know.” A brief time later, the investigator stated,
 

 Well this is why you’re here, to help yourself. Because you know what, if you were — if you were to get arrested on a charge of sexual battery, right, and you go before a judge or a jury and they actually get my version of — that you cooperated in the investigation, it does look a hell of a lot better for you than for you to sit there and fabricate story after story after story....
 

 Then the investigator told appellant,
 

 But you know what, it doesn’t matter, it helps you — it helps you when I talk to the State Attorney and I tell them what type of person you were and how honest you were as to what happened, okay. It doesn’t look good for you when you sit there and start trying to not say what happened....
 

 Briefly later appellant stated that “I just don’t want to go to jail. I don’t like it there.” The investigator responded that “you may be able to bond out like right in a couple of hours. You just got to get booked. What happened, James?” Whereupon, appellant asked, “You gonna help me?” The investigator answered, “I can do my best and talk to the State Attorney. That’s what I can tell you.” A page later in the transcript the investigator stated the following, “I’m gonna tell the State Attorney exactly what you’re telling me. You are cooperating with me. You are telling me what happened. As long as you are honest with me, and I have a lot more than just putting lotion on her, okay. And this is why I — I need you to — to help yourself.”
 

 Finally, the investigator told appellant to “[tjrust me. Trust me,” and
 

 what I’m trying to do is I’m trying to figure out everything that happened here. I’m gonna — I’m
 
 gonna
 
 present this case to the State, okay. They’re gonna go based on what I tell them, alright. You’ve put lotion on her in the bathroom, correct? Is that why you went to the bathroom?
 

 Only after all these statements by the investigator did appellant admit to placing lotion on the victim’s breasts and make other inculpatory statements.
 
 [1]
 

 A confession “must be free and voluntary; that is [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.”
 
 Bram v. United States,
 
 168 U.S. 532, 542-43, 18 S.Ct. 183, 42 L.Ed. 568 (1897). As Justice Jackson stated:
 

 Of course, no confession that has been obtained by any form of physical violence to the person is reliable and hence no conviction should rest upon one obtained in that manner. Such treatment not only breaks the will to conceal or lie, but may even break the will to stand by the truth. Nor is it questioned that the
 
 *1181
 
 same result can sometimes be achieved by threats, promises, or inducements, which torture the mind but put no scar on the body.
 

 Watts v. Indiana,
 
 338 U.S. 49, 59-60, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949) (Jackson, J., concurring).
 

 Thus, it is clear and well-settled in the law that “a confession cannot be obtained through direct or implied promises. In order for a confession to be voluntary, the totality of the circumstances must indicate that such confession is the result of a free and rational choice.”
 
 Johnson v. State,
 
 696 So.2d 326, 329 (Fla.1997).
 

 “A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight.”
 
 Telfort v. State,
 
 978 So.2d 225, 227-28 (Fla. 4th DCA 2008) (citation omitted);
 
 accord Fillinger v. State,
 
 349 So.2d 714, 715-16 (Fla. 2d DCA 1977). “If the interrogator induces the accused to confess by using language which amounts to a threat or promise of benefit, then the confession may be untrustworthy and should be excluded.”
 
 Fillinger,
 
 349 So.2d at 716. The confession may not be the product of “coercive police conduct.”
 
 Blake v. State,
 
 972 So.2d 839, 844 (Fla.2007) (citation omitted).
 

 There must also be a “causal nexus between the improper police conduct and the confession.”
 
 Nelson v. State,
 
 688 So.2d 971, 974 (Fla. 4th DCA 1997). In the
 
 Nelson case,
 
 the court found that the confession was not coerced since, in part, there did not appear to be a “causal nexus” between the comments made by the police in the first thirty minutes of the interview and the appellant’s confession two-and-a-half hours into the interview. In the present case, the record contains more than sufficient evidence to indicate a causal nexus between the investigator’s statements throughout the interview and appellant’s confession.
 

 In
 
 Ramirez v. State,
 
 15 So.3d 852 (Fla. 1st DCA 2009), the court found that the appellant’s statement was induced by improper police conduct based on the totality of circumstances. The police in
 
 Ramirez
 
 constantly offered to “help” the appellant, while at the same time requesting information from the appellant. The detective made statements like, “How am I going to help you if you’re lying to me and you don’t want to tell me the truth?” and “[I]f you want us to help you, you need to help us also.”
 
 Id.
 
 at 854. The detective never explained the limits on his authority to help the appellant. The appellant refeired to the officer as “the law,” who could do whatever he wanted to do.
 
 Id.
 
 Similarly, in the present case, there was a constant barrage of offers to help throughout the statement, often tied to requests for more information. The investigator stated that she would “work something out” for appellant and that she could “fix” and “work with” what happened. The investigator also implied to appellant that the state would rely on “my version” of the facts, and that the state was “gonna go based on what I tell” the state. All in all, the investigator never clarified the limits of her authority and in fact implied significant authority in the process.
 

 In the present case, the state suggests that the investigator’s statements did not constitute an “express quid pro quo” bargain in return for appellant’s confession. However, as explained in
 
 Ramirez:
 

 While the presence of an express “quid pro quo” bargain for a confession will render the confession involuntary as a matter of law,
 
 see Walker [v. State],
 
 771 So.2d [573,] 575 [ (Fla. 1st DCA 2000) ], it is not correct to say that the absence of an express “quid pro quo” bargain insulates police misconduct from claims
 
 *1182
 
 of undue influence or coercion. The test for determining whether a particular confession or statement is involuntary is still whether, in considering the totality of the circumstances, the reviewing court can conclude that the defendant was unable to make a choice free from unrealistic hope and delusions as to his true position, due to the officer’s conduct.
 
 Walker,
 
 771 So.2d at 575.
 

 Ramirez,
 
 15 So.3d at 856. The investigator’s constant offers of help, followed by requests for information, and the lack of clarity on the real limits of the investigator’s authority certainly added to appellant’s “unrealistic hope” that the investigator would truly “help him.”
 

 “It must be remembered that confessions, as such, are equally inadmissible when they are the fruits of hope as when they are the product of fear.”
 
 Rusher v. State,
 
 94 Ga. 363, 21 S.E. 593, 595 (1894). In the present case, based on the totality of circumstances, the many offers of help and the statements implying authority to influence the process rendered appellant’s confession inadmissible as improper “fruits of hope.”
 

 Reversed.
 

 TAYLOR and GERBER, JJ., concur.
 

 [1]
 

 . Another example of the disconcerting questioning of appellant by the investigator included the investigator telling appellant that the victim was "a fourteen year old that's gonna be, you know, promiscuous like that and she’s gonna be exposing herself. I mean she’s partially to blame. I’m not gonna sit here and defend her like one hundred percent.”