KLINGENSMITH, MARK W., Associate Judge.
The state appeals an order granting a motion to suppress statements made by the defendant during the course of an investigation. For the reasons set forth below, we reverse the order suppressing the defendant’s statements.
The defendant, Jarvis Jackson, gave incriminating statements to law enforcement regarding two separate criminal matters. After making the statements, Jackson was charged in one case with second-degree murder with a firearm and possession of a firearm or ammunition by a felon. In another case, he was charged with three counts of first degree murder with a firearm and three counts of attempted first degree murder with a firearm.
At the time those charges were filed, Jackson was already in federal prison serving a fifteen-year sentence on unrelated charges. While serving the sentence, Jackson requested a meeting with a detective from the Palm Beach County Sheriffs Office to discuss a shooting Jackson claimed he had witnessed at a CVS store.[1] Jackson wanted to provide substantial assistance in the investigation of the shooting for purposes of obtaining a reduction of his current sentence under Federal Rule of Criminal Procedure 35 (hereinafter “Rule 35”). Based on the request, the detective, a sergeant, and an ATF agent went to meet with him at the Federal Detention Center in Miami.
Upon their arrival, the investigators conducted a taped interview of Jackson. Although Jackson was not given a Miranda[2] warning before the interview, Jackson concedes that a Miranda warning was not required under these circumstances inas *90 much as he invited law enforcement to interview him at the prison. Jackson told the investigators that he wanted to provide information to them regarding the CVS shooting, and made it clear that his motivation in doing so was to obtain a sentence reduction. After a brief discussion, Jackson was told that the information he provided was already known, and therefore, would not qualify him for a sentence reduction under Rule 85.
The detective testified it was not his intent to obtain inculpatory information from Jackson during this interview. However, law enforcement had previously identified Jackson as a possible suspect in two other homicide cases, including a shooting that occurred at a funeral wake for Jackson’s brother. After getting no new information regarding the CVS shooting, the investigators asked Jackson questions about the shooting at the wake, indicating to him that they knew he was somehow involved.
Jackson again asked whether the investigators could assist in obtaining a sentence reduction for him. The detective told Jackson “we can’t help you unless ... there’s complete honesty.”
At that point, the ATF agent explained the Rule 35 process. He told Jackson that if the information was lucrative, it would be presented to the U.S. Attorney. He also explained, however, that the decision on any possible sentence reduction was in the hands of the U.S. Attorney as well as the judge. The investigators confirmed to Jackson that they could not guarantee he would receive a sentence reduction, but it would only be possible if he provided information to them that they did not already have. Specifically, the sergeant told Jackson, “The only way we can ... do anything at all is you got to give us something to go to the attorneys with. We can’t promise you anything. ... The only way for you to do anything is to find a way to put somebody else where you are. That’s all there is to it. It’s got — it’s a trade.” (Emphasis added). As the ATF agent further described, “you gotta give [substantial assistance] to get [a sentence reduction].” (Emphasis and alterations added). Following this exchange, Jackson then made statements implicating himself in the crimes for which he is now charged. At no time did the investigators promise Jackson he would get a sentence reduction by implicating himself.
During the pendency of these proceedings, Jackson filed a motion to suppress those inculpatory statements. At the hearing on the motion to suppress, the detective and the ATF agent both testified, and both denied promising any benefit to Jackson in exchange for answering the questions. The trial court granted the motion to suppress, holding that under the totality of the circumstances the state failed to satisfy its burden of proving that the confession was voluntary and not the product of an unlawful promise by law enforcement. The court further found that the investigator’s statement “you gotta give to get” constituted an impermissible quid pro quo rendering the confession involuntary. In support of its finding that the confession was involuntary, the trial court relied heavily upon Day v. State, 29 So.3d 1178 (Fla. 4th DCA 2010), and Ramirez v. State, 15 So.3d 852 (Fla. 1st DCA 2009).
When reviewing a ruling on a motion to suppress an incriminating statement, an appellate court accords a presumption of correctness to the trial court’s factual findings, but independently reviews mixed questions of law and fact that ultimately determine constitutional issues. Connor v. State, 803 So.2d 598, 608 (Fla.2001). Whether statements by law enforcement officers constitute coercion is a matter of *91 law reviewed de novo. State v. Walter, 970 So.2d 848, 851 (Fla. 2d DCA 2007).
We hold the trial court erred in granting the motion to suppress Jackson’s statements. It is axiomatic that a confession is inadmissible if it is involuntarily given. To establish that a statement is involuntary, there must be a finding that there was coercive police conduct of a nature sufficient to overcome the free will of the defendant. Baker v. State, 71 So.3d 802, 814 (Fla.2011); Schoenwetter v. State, 931 So.2d 857, 867 (Fla.2006). Statements offered by a suspect after direct or implied promises by law enforcement can, in some circumstances, be rendered inadmissible at trial if obtained as a result of those promises. Johnson v. State, 696 So.2d 326, 329 (Fla.1997). However, interrogation that might arguably be interpreted as including a “promise” to a suspect is not per se improper, nor does such questioning automatically render any resulting statements inadmissible. See Blake v. State, 972 So.2d 839, 844 (Fla.2007).
The statements made by Jackson to the investigators herein were not induced by improper quid pro quo promises. Other courts considering similar statements made by law enforcement to suspects during questioning have found that any information so obtained is admissible when investigators are unequivocal that they are not in a position of authority to make any binding promises in exchange for information. See Maqueira v. State, 588 So.2d 221, 222-23 (Fla.1991) (statement admissible where officer agreed to “do whatever possible to help”, but advised the defendant that he had “no authority to make promises”); United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir.1985) (confession was voluntary where agent stated that “he couldn’t promise anything,” but that if the defendant did cooperate with substantial assistance the U.S. Attorney could recommend a shorter sentence); see also State v. Carroll, 103 So.3d 929, 931 (Fla. 2d DCA 2012) (detective’s statement that he would “see what it is that we can do to help you out” was not a promise of leniency in return for confession).
We find the decisions in both Day and Ramirez to be inapplicable to this case. Here, unlike the circumstances presented in those cases, Jackson freely and voluntarily initiated the discussions with the investigators by calling and inviting them to speak with him. During this discussion, the investigators explained to Jackson the limits of their authority. There was no express or implied promise of leniency made to Jackson in return for his statements. Further, the investigators expressly told Jackson prior to obtaining his statements that they were not the decision-makers regarding any possible leniency or sentence reduction, and in fact specifically identified to him who those decision-makers were. The only “promise” the investigators conveyed to Jackson was that they would present whatever information he gave them to the U.S. Attorney’s office, which in turn would have the authority to consider the information toward any possible recommendation to the U.S. District Judge for a reduced sentence. Furthermore, the investigators’ statements to Jackson would not have reasonably led him to believe that he would be shielded from prosecution because of information he provided.
Because we conclude that the investigators’ conduct never rose to the level of coercion, we reverse the order of suppression and remand for further proceedings.

Reversed and Remanded.

LEVINE and FORST, JJ., concur.

. The detective had known Jackson and his family for approximately twenty years.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).