DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RODNEY SQUIRE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-3320

[February 24, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 09-19699CF10A.

Carey Haughwout, Public Defender, and Peggy Natale, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Rodney Squire appeals his convictions for attempted felony murder and attempted robbery of one victim, and aggravated battery of another. He contends that the trial court made three evidentiary errors, in (1) denying the suppression of his statement to police where it was induced by promises of leniency, (2) admitting the battery victim's statement to police at the time of the incident because it was a *Crawford*[1] violation; and (3) permitting a detective to testify to a hearsay description contained in a BOLO ("be on the lookout"). We agree with each of these contentions and reverse for a new trial.

The charges against appellant, whom the State and defense both stipulated was "mentally retarded," arose out of the attempted robbery of one of the victims, Thompson, as he was handing out CDs at night in a

---

[1] *Crawford v. Washington*, 541 U.S. 36 (2004).

parking lot as part of his employment. Thompson testified that someone pulled out a gun and shot. He did not see the shooter and ran away. He could not identify appellant as the shooter. At trial, he testified that when he was shown a photo lineup by police, he identified the person the detective told him to pick.

A worker in an emergency shelter for girls across the street heard the gunshots. She opened the door and saw victim Seymore, one of the girls from the shelter, running to the house, holding her head and screaming, "I got shot, I got shot." The worker called 911 and, over objection, a recording of the call was played for the jury, during which the worker was heard saying, "She's saying it's a boy named J.R." The worker testified that Seymore was taken to the hospital where she received stitches, and returned to the shelter a few hours later. Seymore did not testify at trial.

A detective, who happened to be in the area and heard the shots, was dispatched to the shelter to determine whether anyone was injured. The detective saw Seymore, who was frantic, bleeding, and crying. Over objection, the detective was allowed to testify that he asked Seymore who shot her and she responded, "J.R." Seymore then gave the detective a description of J.R. Based on this description, the detective sent out a BOLO.

Another officer testified that earlier in the evening, before the shooting, he saw a person known to him as "J.R." several blocks from where the shooting later occurred. Subsequently, when he heard that there had been a shooting, he responded to the area. Over objection, the officer was allowed to testify that he heard a BOLO describing the person and stating that his name was "J.R." He relayed to other officers, and testified at trial, that he knew appellant was J.R.

After interviewing Seymore several days after the incident, the investigating detective met with appellant at the police station and gave him *Miranda* warnings.[2] Over objection and after the denial of his motion to suppress, appellant's statement was played for the jury.

Initially, appellant denied involvement in the shooting. The detective then laid out what had actually happened and repeatedly told appellant that he wanted to give him a chance to truthfully tell his side of the incident. Appellant continued to deny shooting anyone. The detective stated that he knew this was untrue, and that witnesses had already identified appellant in a photo lineup. The detective told appellant that he

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

wanted appellant to leave the interview room saying that the detective "did everything he could to help me." Then the detective said to him,

> But listen, what's a better charge here, a robbery attempt, where nothing was even taken, or two attempted murders. I want you to think about that for a minute . . . 'cause if you tell me the truth, that that was accidental, which is what I think it was, that's a big difference than you trying to hit her, that's a big difference.

The detective also told appellant, "Now, you got to think about an attempted robbery or two attempted murders. Which one do you want to face?" Further, the detective said, "[Appellant], you're going to [go] down on this one if you don't play your cards right." The detective told appellant that he wanted to know if appellant shot the female victim on purpose or whether it was an accident, because the detective was trying to figure out what charge to bring. Appellant claimed that he could beat attempted murder charges, and to go ahead and charge him.

The detective then left appellant in the interview room and allowed him to call his grandmother, to whom he also proclaimed his innocence. Appellant was then brought down to the jail. He asked the detective if he was sure it would be a lesser charge. The detective asked appellant if he was ready to talk and tell the truth. Appellant gave a confession to the detective. Afterwards, he commented to the detective, "You told me I could get a lesser charge if I tell you the truth instead of lying to you." The detective denied that he had promised appellant anything and told him that he would not charge him with attempted murder when he didn't intend to kill anyone.

Nevertheless, appellant was charged with, and found guilty of, attempted felony murder and attempted robbery of Thompson, and aggravated battery of Seymore. On the attempted felony murder charge, he was sentenced to the mandatory minimum of twenty-five years in prison, followed by ten years of probation. He also received the mandatory minimum of twenty-five years in prison for aggravated battery, and twenty years for attempted robbery, with all of the prison terms to run concurrently.

On appeal, appellant argues that the court made three errors in admitting evidence at trial. Our standard of review regarding the admissibility of evidence is abuse of discretion; however, a trial court's discretion is limited by the rules of evidence. *Nardone v. State*, 798 So. 2d

870, 874 (Fla. 4th DCA 2001). We find that the court erred in these evidentiary rulings.

First, appellant argues that his confession was involuntary because the detective repeatedly told him that if he confessed, he would be charged with attempted robbery instead of attempted murder, thus negating the voluntariness of his confession. We agree that the detective's comments created an implied promise of leniency and an agreement to lessen the charges in return for cooperation. Therefore, the confession was induced by impermissible conduct.

To be admissible in evidence, a confession must be voluntary—the product of a "free and rational choice." *Johnson v. State*, 696 So. 2d 326, 329 (Fla. 1997). The court must look at the totality of the circumstances surrounding the confession to determine whether it was the product of a free choice. *Id.*

Recently, in *Day v. State*, 29 So. 3d 1178 (Fla. 4th DCA 2010), we explained that a confession must not be induced by any threat or promise, however slight:

> "A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight." "If the interrogator induces the accused to confess by using language which amounts to a threat or promise of benefit, then the confession may be untrustworthy and should be excluded."

*Id.* at 1181 (citations omitted) (quoting *Telfort v. State*, 978 So. 2d 225, 227-28 (Fla. 4th DCA 2008), and *Fillinger v. State*, 349 So. 2d 714, 716 (Fla. 2d DCA 1977)). We further noted that there must be a "causal nexus" between the promises and the confession. *Id.* at 1181 (quoting *Nelson v. State*, 688 So. 2d 971, 974 (Fla. 4th DCA 1997)).

Based upon *Day,* appellant's confession was the product of promises of leniency, which negated a voluntary choice. Throughout the interview, the detective told appellant that he wanted to help him and that he was trying to figure out whether the shooting was an accident or intentional, so as to determine the proper charge. Similarly to *Day*, the detective never clarified his authority as to charging decisions. In fact, he led appellant to believe that he was the one deciding on the charges and would not charge appellant with attempted murder if the shooting was an accident. Appellant even tried to clarify that the charges would be lessened if he told the truth. These facts, even more than the facts in *Day*, show that the

confession was the result of the detective's promise to lessen the charges if appellant told the truth. As such, it was the product of coercive police conduct and must be suppressed. *See Day*, 29 So. 3d at 1182; *see also Ramirez v. State*, 15 So. 3d 852 (Fla. 1st DCA 2009). The trial court erred in admitting the confession into evidence.

Second, appellant argues that the court erred in overruling his objection to the detective's testimony that Seymore, who did not testify, told him that "J.R." shot her. We agree. This statement could qualify as an excited utterance, since it was made immediately after the shooting when Seymore was bleeding and crying. However, it was inadmissible because it was a testimonial statement made to assist the detective in the investigation, and thus it was a violation of the Sixth Amendment to admit it. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004).

In *Hayward v. State*, 24 So. 3d 17, 28-29 (Fla. 2009), the victim of a robbery, who was shot during the crime and later died, described for police his assailant and told them he had fired a shot at the robber. The Florida Supreme Court held that, while the out-of-court statement was an excited utterance, it still was a violation of the defendant's rights under the Confrontation Clause to admit it because the victim's statements about past events was made only for purposes of investigation and to assist the officer in locating and prosecuting the perpetrator. *Id.* at 31-33. It was not meant to help the officer respond to an emergency. *Id.* at 32.

Similarly, in the present case, Seymore's statement to the detective was made for purposes of assisting in the investigation and thus it was a violation of the Confrontation Clause to admit it. For the same reason, we also hold that it was error to admit that portion of the 911 call from the shelter in which the caller relayed Seymore's statement that the person who shot her was "J.R." That information was given after the incident was over, and for the purposes of investigation[3] and assisting the police in identifying and locating the perpetrator. Under *Hayward*, it too should not have been admitted.

Third, appellant argues that the court reversibly erred in allowing the officer to testify to the contents of the BOLO. The officer testified, over objection, to the contents of the BOLO that described the assailant and named him as "J.R." The officer stated upon hearing the BOLO, he knew that it was describing appellant because he had seen appellant nearby

---

[3] The caller, who was not a witness to the shooting or a trial witness, was responding to a police dispatcher's questions of "who shot her?" and "can she give you any type of information?"

earlier in the evening and knew that he went by the name "J.R."  We agree that the trial court erred in admitting the hearsay description in the BOLO, in particular the identity of the individual.  Courts have held, time and time again, that the contents of a BOLO are inadmissible hearsay as being offered for the truth of the matter asserted, in this case the identity of the assailant.  *See Saintilus v. State*, 869 So. 2d 1280, 1282 (Fla. 4th DCA 2004); *see also Tillman v. State*, 964 So. 2d 785, 788 (Fla. 4th DCA 2007) (reversing where the contents of two BOLOs were improperly admitted into evidence to show the state of mind of the police where their state of mind was not a material issue of any offense charged).

Clearly, this erroneously admitted evidence was central to appellant's conviction.  It cannot be said beyond a reasonable doubt that the wrongful admission of these three types of evidence was harmless under *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).  We thus reverse and remand for a new trial.

*Reversed and remanded.*

TAYLOR and FORST, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***