DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RODNEY SQUIRE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-3320

[May 25, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 09-19699CF10A.

Carey Haughwout, Public Defender, and Peggy Natale, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

*ON MOTION FOR REHEARING*

WARNER, J.

We grant in part and deny in part appellee's motion for rehearing, withdraw our previously issued opinion and substitute the following opinion in its place.

Rodney Squire appeals his convictions for attempted felony murder and attempted robbery of one victim, and aggravated battery of another. He contends that the trial court made three evidentiary errors: (1) denying the suppression of his statement to police where it was induced by promises of leniency; (2) admitting the battery victim's statement to police at the time of the incident because it was a *Crawford* violation;[1] and (3) permitting a detective to testify to a hearsay description contained in a

---

[1] *Crawford v. Washington,* 541 U.S. 36 (2004).

BOLO ("be on the lookout").  We reverse as to the first and third issues but affirm as to the second issue.

The charges against appellant, whom the State and defense both stipulated was "mentally retarded," arose out of the attempted robbery of one of the victims, Thompson, as he was handing out CDs at night in a parking lot as part of his employment.  Thompson testified that someone pulled out a gun and fired.  He did not see the shooter and ran away.  He could not identify appellant as the shooter.  At trial, he testified that when he was shown a photo lineup by police, he identified the person the detective told him to pick.

A worker in an emergency shelter for girls across the street heard the gunshots.  She opened the door and saw victim Seymore, one of the girls from the shelter, running to the house, holding her head and screaming, "I got shot, I got shot."  The worker called 911 and, over objection, a recording of the call was played for the jury, during which the worker was heard saying, "She's saying it's a boy named J.R."  The worker testified that Seymore was taken to the hospital where she received stitches, and returned to the shelter a few hours later.  Seymore did not testify at trial.

A detective, who happened to be in the area and heard the shots, was dispatched to the shelter to determine whether anyone was injured.  The detective saw Seymore, who was frantic, bleeding, and crying.  Over objection, the detective was allowed to testify that he asked Seymore who shot her and she responded, "J.R."  Seymore then gave the detective a description of J.R.  Based on this description, the detective sent out a BOLO.

Another officer testified that earlier in the evening, before the shooting, he saw a person known to him as "J.R." several blocks from where the shooting later occurred.  Subsequently, when he heard that there had been a shooting, he responded to the area.  Over objection, the officer was allowed to testify that he heard a BOLO describing the person and stating that his name was "J.R."  He relayed to other officers, and testified at trial, that he knew appellant was J.R.

After interviewing Seymore several days after the incident, the investigating detective met with appellant at the police station and gave him *Miranda* warnings.[2]  Over objection and after the denial of his motion to suppress, appellant's statement was played for the jury.

---

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966).

2

Initially, appellant denied involvement in the shooting. The detective then laid out what had actually happened and repeatedly told appellant that he wanted to give him a chance to truthfully tell his side of the incident. Appellant continued to deny shooting anyone. The detective stated that he knew this was untrue, and that witnesses had already identified appellant in a photo lineup. The detective told appellant that he wanted appellant to be able to leave the interview room saying that the detective "did everything he could to help me." Then the detective said to him,

> But listen, what's a better charge here, a robbery attempt, where nothing was even taken, or two attempted murders. I want you to think about that for a minute . . . 'cause if you tell me the truth, that that was accidental, which is what I think it was, that's a big difference than you trying to hit her[.]

The detective also told appellant, "Now, you got to think about an attempted robbery or two attempted murders. Which one do you want to face?" Further, the detective said, "[Appellant], you're going to down [sic] on this one if you don't play your cards right." The detective told appellant that he wanted to know if appellant shot the female victim on purpose or whether it was an accident, because the detective was trying to figure out what charge to bring. Appellant claimed that he could beat attempted murder charges, and to go ahead and charge him.

The detective then left appellant in the interview room and allowed him to call his grandmother, to whom appellant also proclaimed his innocence. Appellant was then brought down to the jail. He asked the detective if he was sure it would be a lesser charge. The detective asked appellant if he was ready to talk and tell the truth. Appellant then gave a confession to the detective. Afterwards, he commented to the detective, "You told me I could get a lesser charge if I tell you the truth instead of lying to you." The detective denied that he had promised appellant anything and told him that he would not charge him with attempted murder when he didn't intend to kill anyone.

Nevertheless, appellant was charged with, and found guilty of, attempted felony murder and attempted robbery of Thompson, and aggravated battery of Seymore. On the attempted felony murder charge, he was sentenced to the mandatory minimum of twenty-five years in prison, followed by ten years of probation. He also received the mandatory minimum of twenty-five years in prison for aggravated battery, and twenty years for attempted robbery, with all of the prison terms to run concurrently.

On appeal, appellant argues that the court made three errors in admitting evidence at trial. Our standard of review regarding the admissibility of evidence is abuse of discretion; however, a trial court's discretion is limited by the rules of evidence. *Nardone v. State*, 798 So. 2d 870, 874 (Fla. 4th DCA 2001). We find that the court erred in these evidentiary rulings.

First, appellant argues that his confession was involuntary because the detective repeatedly told him that if he confessed, he would be charged with attempted robbery instead of attempted murder, thus negating the voluntariness of his confession. We agree that the detective's comments created an implied promise of leniency and an agreement to lessen the charges in return for cooperation. Therefore, the confession was induced by impermissible conduct.

To be admissible in evidence, a confession must be voluntary—the product of a "free and rational choice." *Johnson v. State*, 696 So. 2d 326, 329 (Fla. 1997). The court must look at the totality of the circumstances surrounding the confession to determine whether it was the product of a free choice. *Id.*

Recently, in *Day v. State*, 29 So. 3d 1178 (Fla. 4th DCA 2010), we explained that a confession must not be induced by any threat or promise, however slight:

> "A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight." "If the interrogator induces the accused to confess by using language which amounts to a threat or promise of benefit, then the confession may be untrustworthy and should be excluded."

*Id.* at 1181 (citations omitted) (quoting *Telfort v. State*, 978 So. 2d 225, 227-28 (Fla. 4th DCA 2008), and *Fillinger v. State*, 349 So. 2d 714, 716 (Fla. 2d DCA 1977)). We further noted that there must be a "causal nexus" between the promises and the confession. *Day*, 29 So. 3d at 1181 (quoting *Nelson v. State*, 688 So. 2d 971, 974 (Fla. 4th DCA 1997)).

Based upon *Day*, appellant's confession was the product of promises of leniency, which negated a voluntary choice. Throughout the interview, the detective told appellant that he wanted to help him and that he was trying to figure out whether the shooting was an accident or intentional, so as to determine the proper charge. Similarly to *Day*, the detective never clarified his authority as to charging decisions. In fact, he led appellant to believe

4

that he was the one deciding which charges were to be filed and would not charge appellant with attempted murder if the shooting was an accident. Appellant even tried to clarify that the charges would be lessened if he told the truth. These facts, even more than the facts in *Day*, show that the confession was the result of the detective's promise to lessen the charges if appellant told the truth. As such, it was the product of coercive police conduct and must be suppressed. *See Day*, 29 So. 3d at 1182; *see also Ramirez v. State*, 15 So. 3d 852 (Fla. 1st DCA 2009). The trial court erred in admitting the confession into evidence.

Second, appellant argues that the court erred in overruling his objection to the detective's testimony that Seymore, who did not testify, told him that "J.R." shot her. This statement qualifies as an excited utterance, since it was made immediately after the shooting when Seymore was bleeding and crying. However, appellant claims that it was inadmissible because it was a testimonial statement made to assist the detective in the investigation, and thus it was a violation of the Sixth Amendment to admit it. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004).

In *Hayward v. State*, 24 So. 3d 17, 28-29 (Fla. 2009), the victim of a robbery, who was shot during the crime and later died, described for police his assailant and told them he had fired a shot at the robber. The Florida Supreme Court held that, while the out-of-court statement was an excited utterance, it still was a violation of the defendant's rights under the Confrontation Clause to admit it because the victim's statements about past events was made only for purposes of investigation and to assist the officer in locating and prosecuting the perpetrator. *Id.* at 31-33. It was not meant to help the officer respond to an emergency. *Id.* at 32.

As the facts of *Hayward* are similar, were we to apply it, we would conclude that admission of Seymore's statement would be a *Crawford* violation. However, after *Hayward* was decided, the United States Supreme Court decided *Michigan v. Bryant*, 562 U.S. 344 (2011), a factually similar case. In *Bryant*, the Court further differentiated between testimonial statements under *Crawford* and statements made to law enforcement which have a primary purpose to assist the police in an ongoing emergency. *Id.* at 363-65. The Court explained:

> An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may

5

> continue. . . . [T]he duration and scope of an emergency may depend in part on the type of weapon employed.

*Id.* at 363-64. The victim's medical condition factors into whether statements made in the course of police action were nontestimonial, as, in part, it provides context for first responders to judge whether there is a continuing threat to the victim or the public at large. *Id.* at 364-65. The nature of the interrogation and its formality are also considered to be aspects of whether the statement is testimonial. *Id.* at 366. Ultimately, in *Bryant,* the Court concluded that the questioning of a dying victim shortly after he was shot, in which the victim identified his assailant, did not violate *Crawford* because the victim's statement was not testimonial and in questioning the victim police had a primary purpose to meet an ongoing emergency. *Id.* at 377-78.

The Florida Supreme Court adopted the analysis of *Bryant* in *Delhall v. State,* 95 So. 3d 134 (Fla. 2012). In *Delhall,* police responded to a 911 call to find the victim shot and bleeding. *Id.* at 143. He was asked by the officer if he had any idea who had shot him. *Id.* The victim identified a specific individual and also gave a description of the getaway vehicle. *Id.* The victim died at the scene. *Id.* The court held that the victim's statement to the officer constituted an excited utterance which was not a testimonial statement under *Crawford* in light of the Supreme Court's analysis in *Bryant,* noting the factual similarity of the conditions surrounding the victim's statement in both cases. *Id.* at 158.

Although the court in *Delhall* did not mention *Hayward v. State,* 24 So. 3d 17 (Fla. 2009), the factual circumstances of the statement in *Hayward* are likewise similar to both *Bryant* and *Delhall.* Each of these cases involved an officer arriving shortly after the commission of a crime where the victim was shot and in substantial distress. The perpetrator was still on the loose and a gun was involved. Thus, in these cases an ongoing emergency was occurring, and the public at large could be in danger because of the presence of a gun. As noted by the court in *Delhall* in reviewing *Bryant,* "the question to the victim in *Bryant* asking 'what had happened' was precisely the type of question that would allow police to assess the situation, including the threat to their own safety and possible danger to the victim and to the public." *Delhall,* 95 So. 3d at 158.

Due to the factual similarities, it would appear that the court in *Delhall* sub silentio overruled *Hayward.* Although our Supreme Court has held that it does not intentionally overrule itself sub silentio, *Puryear v. State,* 810 So. 2d 901, 905 (Fla. 2002), we think in this case that we should follow *Delhall* rather than *Hayward.* The two cases have conflicting express

holdings, but because *Bryant* intervened between the two decisions, it clarified the criteria for determining when the primary purpose of the statement is testimonial in nature for purposes of *Crawford.*

For this reason, we now apply *Bryant* and *Delhall* to the facts in this case. The victim's statement, made shortly after the incident occurred when she was injured and hysterical, was clearly an excited utterance. The officer who responded to the scene was responding to an emergency. As part of his assessment, he asked the victim who shot her. This was to determine the possibility of an on-going threat to the victim, the police, and the general public, just as in *Bryant* and *Delhall.* We conclude that the statement was made for the primary purpose of assisting the police in responding to an emergency. It was not testimonial. Therefore, as an excited utterance, it was admissible.

We come to the same conclusion regarding the 911 call placed by the worker at the shelter where the victim fled. The call was for the purpose of reporting an emergency as it was occurring and to help the police in responding. It too was not testimonial under *Crawford/Bryant.*

Third, appellant argues that the court reversibly erred in allowing the officer to testify to the contents of the BOLO. The officer testified, over objection, that the BOLO described the assailant and named him as "J.R." The officer stated upon hearing the BOLO, he knew that it was describing appellant because he had seen appellant nearby earlier in the evening and knew that he went by the name "J.R." We agree that the trial court erred in admitting the hearsay description in the BOLO, in particular the identity of the individual. Courts have held, time and time again, that the contents of a BOLO are inadmissible hearsay as being offered for the truth of the matter asserted, in this case the identity of the assailant. *See Saintilus v. State*, 869 So. 2d 1280, 1282 (Fla. 4th DCA 2004); *see also Tillman v. State*, 964 So. 2d 785, 788 (Fla. 4th DCA 2007) (reversing where the contents of two BOLOs were improperly admitted into evidence to show the state of mind of the police where their state of mind was not a material issue of any offense charged).

The erroneously admitted evidence was central to appellant's conviction. It cannot be said beyond a reasonable doubt that the wrongful admission of evidence was harmless under *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). We thus reverse and remand for a new trial.

*Affirmed in part, reversed in part and remanded.*

TAYLOR and FORST, JJ., concur.

\*        \*        \*

*Not final until disposition of timely filed motion for rehearing.*