DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL TYRONE MOORE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1083

[ February 5, 2020 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew Siegel, Judge; L.T. Case No. 14006988CF10A.

Carey Haughwout, Public Defender, and Logan Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Appellant, Michael Moore, appeals his conviction and sentence for burglary of a dwelling. Because we conclude that appellant's confession was involuntary and should have been suppressed, we reverse appellant's conviction and remand for a new trial.

On the morning of May 5, 2014, the victim came home to her apartment and walked into her bedroom. A man jumped out of the bedroom closet, hit her in the head with his hand or an object, and then fled. The intruder appeared to have entered the apartment through the bedroom window. Appellant's DNA was found on a swab taken from the victim's bedroom windowsill.

Appellant was interrogated for several hours by law enforcement officers. During the interrogation, appellant repeatedly denied that he went inside the victim's apartment. The officers made multiple comments about helping appellant or speaking to a judge about his case. Some of the officers' comments could be construed as permissible attempts to confront appellant with evidence of his guilt, such as the following: "So

how do we explain to a judge that your DNA is in this lady's apartment?"

However, before appellant confessed, the officers also made multiple vague offers to help appellant, often implying that it would benefit him to "come clean" or that it would be worse for him if he denied culpability. One detective told appellant that "this is the one and only chance you get" if appellant wanted the detective to tell the judge about his cooperation. The detective also suggested that the guys who say things like "I don't know what you're talking about" do worse in court. The detective also implied that he had the authority to amend the charges: "So, help me help you, dude . . .. So, help me help you. I [c]an always amend this."

Without quoting the interrogation at length, we note that the officers made constant vague offers to help appellant yet failed to explain or clarify the limits of their authority.

About two-and-a-half hours into the interrogation, when a detective asked appellant to tell him "what part of this I have wrong so that, maybe, we can change it," appellant stated: "Let me talk to you as a man. Fuck all of that I don't know nothing."

Appellant eventually began to make incriminating statements. Appellant admitted that he had entered the victim's apartment through the window, but claimed that another man was with him. Appellant stated that when the victim came home, he hid in a hallway closet and left the apartment. Appellant denied hitting the victim and claimed that the other man probably did it.

Appellant later made clear that he was implicating himself because he wanted "some form of leniency" and didn't want to be the guy who says, "I don't know." The detective replied: "Well, that's what I can do for you. That's why I was telling you – that's – how I can help you."

The police continued to interrogate appellant for several more hours, questioning him about the May 2014 burglary as well as other burglaries.

Appellant moved to suppress the interrogation, but the trial court found that appellant's confession was voluntary and denied the motion. Appellant's interrogation was admitted into evidence at trial.

The jury found appellant guilty of burglary of a dwelling. Appellant now appeals from his conviction and sentence.

On appeal, appellant raises multiple issues, but we need only address

appellant's argument that his confession was involuntary.

An appellate court accords a presumption of correctness to the trial court's factual findings in connection with a motion to suppress, but independently reviews mixed questions of law and fact that ultimately determine constitutional issues. *Connor v. State*, 803 So. 2d 598, 608 (Fla. 2001). The issue of whether an interrogator's statements constitute coercion presents a question of law reviewed de novo. *State v. Jackson*, 120 So. 3d 88, 90–91 (Fla. 4th DCA 2013).

Under the due process clause, "[a] confession is inadmissible if it is involuntary." *Martin v. State*, 107 So. 3d 281, 298 (Fla. 2012). The determination of whether a confession was voluntary is based on the totality of the circumstances. *Arizona v. Fulminante*, 499 U.S. 279, 285–87 (1991).[1] A confession is voluntary if "it was the product of free will and rational choice." *Martin*, 107 So. 3d at 298. "Thus, whether a confession is admissible depends on (1) whether the interrogating officers engaged in coercive activity, and (2) whether that activity was sufficient to overcome the free will of the defendant." *Baker v. State*, 71 So. 3d 802, 814 (Fla. 2011).

"In assessing the totality of the circumstances, a court must consider any promises or misrepresentations made by the interrogating officers." *Martin*, 107 So. 3d at 298. "Before finding the confession inadmissible, Florida courts have repeatedly required that the alleged promise 'induce,' be 'in return for,' or be a 'quid pro quo' for the confession." *Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007).

The absence of an express "quid pro quo" bargain does not, however, preclude a finding of coercion. *See Ramirez v. State*, 15 So. 3d 852, 856 (Fla. 1st DCA 2009). Although some older Florida cases have stated that police "statements suggesting leniency are only objectionable if they establish an express quid pro quo bargain for confession,"[2] the Florida Supreme Court has since explained that more recent U.S. Supreme Court

_____

[1] In *Bram v. United States*, 168 U.S. 532, 542–43 (1897), the United States Supreme Court stated that a confession cannot be obtained by "any direct or implied promises, however slight." However, in *Arizona v. Fulminate*, 499 U.S. 279, 285 (1991), the Court noted that this passage from *Bram* "does not state the standard for determining the voluntariness of a confession" under current precedent.

[2] *See State v. Moore*, 530 So. 2d 349, 350 (Fla. 2d DCA 1988); *see also Bruno v. State*, 574 So. 2d 76, 79–80 (Fla. 1991) (citing *Moore* for this proposition); *Philmore v. State*, 820 So. 2d 919, 928 (Fla. 2002) (quoting *Bruno* for this proposition).

decisions "render this authority questionable at best." *Martin*, 107 So. 3d at 314. Instead, the proper analysis requires an evaluation of the totality of the circumstances. *Id.*

A statement is involuntary if, considering the totality of the circumstances, the court concludes that "the defendant was unable to make a choice free from unrealistic hope and delusions as to his true position, due to the officer's conduct." *Ramirez*, 15 So. 3d at 856. For example, in *Ramirez,* the First District Court of Appeal held that the defendant's confession was involuntary where the detective made "constant offers of unspecified help" and failed to explain the limits of his authority, telling the defendant that "[t]his is your only chance" and that "[i]f you want us to help you, you need to help us also." *Id.* at 856–57.

Similarly, in *Day v. State*, 29 So. 3d 1178, 1182 (Fla. 4th DCA 2010), our court held that, under the totality of the circumstances, the investigator's "many offers of help" and statements implying authority to influence the process rendered the defendant's confession inadmissible as improper "fruits of hope." Relying on *Ramirez,* we explained: "The investigator's constant offers of help, followed by requests for information, and the lack of clarity on the real limits of the investigator's authority certainly added to appellant's 'unrealistic hope' that the investigator would truly 'help him.'" *Id.*

Nonetheless, merely advising a suspect of potential penalties and encouraging a suspect to cooperate does not amount to coercive conduct. *Martin*, 107 So. 3d at 305. Neither does merely offering to make the suspect's cooperation known to prosecuting authorities or to the judge, without more, render a confession involuntary. *See Maqueira v. State*, 588 So. 2d 221, 223 (Fla. 1991); *Parker v. State*, 845 So. 2d 242, 243 (Fla. 5th DCA 2003).

In *Martin,* for example, our supreme court held that a confession was voluntary where, although the detectives offered to convey the defendant's cooperation to the State, the detectives also explicitly told him that they could not make any promises. 107 So. 3d at 312–13. The supreme court explained that the detectives "clearly explained to [the defendant] the limits of their authority and did not commit an error similar to that in *Day* or *Ramirez*." *Id.* at 312. However, the supreme court was also careful to note that the techniques the detectives used in *Martin* presented "the very outer limit as to what tactics law enforcement may employ when performing a custodial interrogation." *Id.* at 298.

Under the totality of the circumstances in this case, we conclude that appellant's confession was involuntary. The interrogation tactics in this case were nearly identical to those that resulted in involuntary confessions in *Day* and *Ramirez*. Here, just as in *Day*, the "constant offers of help, followed by requests for information, and the lack of clarity on the real limits of the [officers'] authority certainly added to appellant's 'unrealistic hope' that the [officers] would truly 'help him.'" 29 So. 3d at 1182.

As the State correctly points out, many of the interrogators' most problematic statements occurred well after appellant had already confessed to key details of the burglary. We thus need not focus on any of the officers' statements that occurred after appellant began to implicate himself. However, close scrutiny of the officers' statements that occurred before appellant began to confess leads us to conclude that appellant's statement was involuntary.

Here, as in *Day* and *Ramirez*, the officers never explained the limits on their authority to help appellant. The officers gave constant offers of unspecified help when they were requesting information from appellant, told appellant that the interview was his "only chance" to come clean so that they could tell the judge about his cooperation, warned appellant that the guys who say things like "I don't know what you're talking about" do worse in court, and even implied significant authority to amend the charges.

Viewing the totality of the officers' statements that led to the confession, we conclude that appellant's confession was the product of the officers giving appellant an unrealistic hope of leniency and delusions as to his true position. The fact that appellant did not confess to striking the victim is not dispositive on the question of whether his will was overborne. The officers' tactics clearly induced appellant to make incriminating statements. Their numerous offers of help, suggestions of leniency if appellant cooperated, implied threats of increased punishment if he did not confess, and statements implying authority to influence the process rendered appellant's confession inadmissible.

We cannot say that the erroneous admission of appellant's confession was harmless. *See State v. DiGuilio,* 491 So. 2d 1129 (Fla. 1986). Accordingly, we reverse the denial of appellant's motion to suppress and remand for a new trial. This disposition renders it unnecessary for us to reach the other issues appellant raises on appeal.

*Reversed and Remanded.*

MAY and DAMOORGIAN, JJ., concur.

*   *   *

***Not final until disposition of timely filed motion for rehearing.***