WOLF, J.
Appellant challenges his convictions and sentences for offenses arising out of the robbery of a jewelry store and the conspiracy to rob a second jewelry store. Appellant asserts the trial court erred in denying his motion to suppress incriminating statements he made to police. He argues thé statements were elicited in violation of his Fifth Amendment rights after he unequivocally invoked his right to counsel. He further argues the statements were involuntarily made as the result of,police officers misrepresenting the law by promising him that if he confessed to committing the offenses but stated he used a BB gun rather than a firearm, he could only be charged with robbery, not armed robbery ■ with a deadly weapon. . We agree with appellant’s: second assertion. It is, therefore, unnecessary-to reach the first issue. -We also find the court’s error in admitting the statements-made by appellant after the officers’ misrepresentation of the law was harmful, and thus, we reverse.
I. Facts
Police officers arrested appellant, and he signed a Minmda[1] waiver. Officers believed that appellant and two other men committed the armed robbery of a jewelry store weeks' earlier. They also believed the, men intended to rob a second jewelry store earlier that day but changed their minds and. fled when they became concerned .that the store employees were armed. Officers, repeatedly encouraged appellant to confess to involvement in both incidents, but he refused. Appellant then stated, “I need to make a phone call and see if I can get contact with my people so I can get an attorney for some kind of reason. Don’t you feel like I have that kind of right?” The officer responded, “You have the right to talk to an attorney, but like I said, it’s one of those things where once you request an attorney, then I ean’t talk to you anymore.... [L]ike I said, I don’t want you to throw away an opportunity, okay?” The officers continued to question appellant.[2]
As the questioning progressed, one officer indicated he had reason to believe that the guns the men used were BB guns-, not firearms. The officer stated that if the men did in fact use BB guns, “this is the time for you to tell us that” because “it makes a world of difference,” Appellant asked why it made a difference. The officer responded that “a robbery with a real *505 firearm, versus robbery with a. BB gun, are two totally different charges.” •
Appellant asked if he was being charged with armed robbery for the first jewelry-store and attempted armed robbery for the second jewelry store. The officer stated, “That’s what you’re looking at right-now.” Appellant asked, “What do you consider attempted armed robbery? BB guns?”- The officer responded that if BB guns were used, “[ijt’s attempted robbery. It’s not armed robbery . /., there’s & difference when you carry a gun to a robbery- and when you don’t carry a gun to a robbery.” (Emphasis added). A second officer stated that “BB guns are along the lines of having a sling shot, okay? Technically it is a weapon. Is it likely to kill someone? That’s the big ¡difference. A firearm is likely to kill somebody.” The first officer similarly stated, “BB gun, is not considered a.tdeadly weapon; firearm is.” (Emphasis added). Appellant asked, “But the BB gun is still going to be considered an armed robbery ?” .(Emphasis-added). The officer stated, “No, it’s considered a robbery.” (Emphasis added). .
Appellant responded by confessing to the first robbery weeks earlier and to conspiracy to commit a robbery earlier that day, stating they used BB guns. Officers then allowed appellant to speak with one of the other men implicated in the offenses, Jason Josepa. Josepa stated he was afraid of being charged under the “10-20-Life” law. Appellant responded, “No. They were telling me the difference the actual gun could kill, and a BB gun could poke your eye out.” Josepa continued to express concern.' Appellant, stated, “BB guns, man. Like, real guns they know to kill. (Inaudible). As far as you dealing with this armed robbery. That’s the main thing that you got going for you. That’s the reason why I came out with it, because it’s-true.” (Emphasis added).
The State subsequently charged appellant with two counts. of armed robbery with a deadly weapon — a BB gun (counts 1-2), grand theft over $100,000 (count 3), and false imprisonment (count 4), all stemming from-the first robbery. The State charged him with conspiracy to commit robbery with a weapon (count 5) stemming from the second incident.
Prior, to trial, appellant filed a motion in limine seeking to suppress his statements. He argued they were obtained after he invoked his right to counsel and after the officers misrepresented the law by promising that he could not be charged with armed robbery if he confessed- to using BB guns. The. trial court denied the motion.
For counts 1-2, the jury found appellant guilty of the lesser-included offense of robbery with a weapon. The jury found him guilty as charged of count 3, grand theft. For count 4, the jury found him guilty of the le'sser-included offense of assault. For count 5, the jury found him guilty as charged of conspiracy to commit robbery with a weapon. The trial court sentenced appellant to concurrent sentences of 25 years in prison for counts 1-3, time served for count 4, and 15 years in -prison for count 5 to be served consecutively to the sentences for counts 1-3.
II. Analysis
“A trial court’s ruling on a motion to suppress carries a presumption of correctness. We give deference to the trial court’s factual findings if they are supported by - competent, substantial evidence but we review the, trial court’s determination of constitutional rights de novo.” Spivey v. State, 45 So.3d 51, 54 (Fla. 1st DCA 2010) (citations -omitted). A trial court’s ruling on a motion to suppress is reviewed for harmless error. See Scott v. State, 151 So.3d 567, 573 (Fla. 1st DCA 2014).
*506 Appellant argues the trial court erred in denying his motion to- suppress statements he made to police because his statements were made after officers misrepresented the law by promising that he could not be charged with armed robbery with a deadly weapon if he confessed to committing the robbery using BB guns. We agree.
“It is well-settled that statements obtained through direct or implied promises 'are involuntary and, thus, inadmissible at trial. Although this exclusionary rule was originally instituted out of concerns for the truthfulness of such statements, it is now recognized that such statements may be excluded on due process grounds.” Ramirez v. State, 15 So.3d 852, 855 (Fla. 1st DCA 2009) (citations omitted). “To exclude a statement on due process grounds, as Appellant urged the trial court to do, a court must find that it was, obtained as a result of.‘overreaching or Coercive conduct by the police.” Id.
 The voluntariness of a defendant’s statement is determined considering the totality of the circumstances:
For a confession or inculpatory statement to be voluntary, the totality of the circumstances surrounding the statement must indicate the statement was the result of a free and rational choice. The mind of the accused should, at the time, be free to act, uninfluenced by fear or hope. To exclude a confession or an inculpatory statement, it is not -necessary that any direct promises or threats be made to the accused. It is sufficient if the circumstances or declarations of those present are calculated to delude the' prisoner as to his true position 'and exert an improper influence over- his mind. A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight.
Id. (quoting Walker v. State, 771 So.2d 573, 575 (Fla. 1st DCA 2000)).
“Further, to exclude a statement as involuntary based on improper police tactics, a-court must Conclude that there is a causal connection between the improper conduct and the statement.” Id. at 855-56, “The test for- determining whether a particular confession or statement is involuntary is still whether, in considering the totality of the circumstances, the reviewing court can conclude that the defendant was unable -to make a choice free from unrealistic hope and delusions as to his true position, due to the officer’s conduct.” Id. at 856.
Both federal and Florida case law distinguish between a police officer’s misrepresentation of fact versus a misrepresentation of law. Generally, “misrepresentation[s] of fact ..., are not enough to render a suspect’s-ensuing confession involuntary, nor does it undermine the waiver of the'defendant’s Miranda rights. Police misrepresentations of law, on the other hand, are much more likely to render a suspect’s confession involuntary.” United States v. Lall, 607 F.3d 1277, 1285 (11th Cir.2010) (citations omitted). See also State v. Manning, 506 So.2d 1094, 1098 (Fla. 3d DCA 1987) (“Florida’s view of misstatements of fact by the police is in accord with federal law. Courts have distinguished between police misstateménts which delude a defendant as to the import of his confession, and are thus improper, and police misstatements of relevant facts, which can be-proper.”) .(citations omitted).
Here, police made a promise to appellant that he could only be charged with robbery, not armed robbery or armed robbery with a deadly weapon, if he used a BB gun. That promise was a misrepresentation of the law. A BB gun can support a conviction for armed robbery with a deadly weapon. See Dale v. State, 703 *507 So.2d 1045, 1047 (Fla.1997). Appellant was, in fact, charged with armed robbery with a deadly weapon, and convicted of robbery with a weapon as a lesser-included offense. He was also charged and convicted of conspiracy to commit robbery with a weapon.[3]
It is clear from the interview transcript that there was a “causal connection between the improper conduct and the statement.” Ramirez, 15 So.3d at 855-56. Although appellant had repeatedly refused to confess during the. interview, when the officers told appellant he could not be charged with armed robbery with a deadly weapon if they used BB guns, he confessed almost immediately and specified they used BB guns. Afterwards, appellant told Josepa that the officers said they could not be charged , with armed robbery if they used BB guns and “[tjhat’s the reason I came out with it — ” Thus, we find the officers’ promise that appellant could not be charged with armed robbery .with a deadly weapon was a misrepresentation of the law that rendered involuntary appellant’s statements that followed.
Finally, the error in admitting appellant’s statements was not harmless. As such, we REVERSE.
ROBERTS, C.J., and KELSEY, J;, ' concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. It is unnecessary for us to address this discussion because appellant made no pertinent statements Between the time of this discussion and the time of the officers' misrepresentation of the law.

. We note that the degrees of robbery are often referred to as ."armed robbery,” although the robbery statute does not use the word "armed.” Section 812,13, Florida Statutes, sets forth the offenses Of robbery with á firearm or deadly weapon, which is a first-degree felony punishable by up to life in prison; robbery with a weapon, which is a first-degree felony punishable by up to 30 years in prison; and robbery, which is a second-degree felony punishable by up to 15 years in prison; §§ 775.082(3), 812.13(2)(a)-(c), Fla. Stat. (2012). When the. officers told appellant that he could only be charged with "robbery,” not "armed robbery” or "armed robbery with a deadly weapon,” the clear message was that he could only be charged with simple robbery, not robbery with a weapon, or robbery with a deadly weapon.