# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-759
_____

CHRISTOPHER ALLEN TEACHMAN,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Suwannee County.
David W. Fina, Judge.

January 2, 2019

B.L. THOMAS, C.J.

Appellant was convicted of sexual battery and lewd and lascivious molestation of a child. Before trial, Appellant provided a confession during an interview with a police investigator. At trial, the victim testified in detail about the molestation and forced sexual activity, which began when she was eight years old and continued until she was fifteen years old. Appellant now argues on appeal that the trial court erred in denying a motion to suppress his confession to law enforcement. In addition, he asserts that reversible error occurred when the trial court excluded evidence of the victim's consensual sexual relationship with her boyfriend.

## I. The Confession

"'A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the [reviewing] court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling.'" *Rodriguez v. State*, 187 So. 3d 841, 845 (Fla. 2015) (quoting *Terry v. State*, 668 So. 2d 954, 958 (Fla. 1996)). Where there is no dispute over the statements made, we must "review de novo the trial court's conclusion that the officer's statements did not render Appellant's statements involuntary." *Ramirez v. State*, 15 So. 3d 852, 855 (Fla. 1st DCA 2009); *see also State v. Teamer*, 151 So. 3d 421, 425 (Fla. 2014) (holding that the trial court's application of law to the facts is reviewed de novo).

Appellant came to the police interview voluntarily, and his confession was taken in a non-custodial setting. Before the interview began, the investigator told Appellant that he was not under arrest, did not have to answer questions, could leave at any time, and could request an attorney at any time. Appellant was never threatened with harm, and the interview lasted less than thirty minutes. Although the investigator told Appellant that things would be easier for him if he told the truth, and the investigator would tell the prosecutor if Appellant was cooperative, these comments were neither improper nor coercive. *See Caraballo v. State*, 39 So. 3d 1234, 1247 (Fla. 2010).

Although "[i]t is well-settled that statements obtained through direct or implied promises are involuntary and, thus, inadmissible at trial," there must be "a causal connection between the improper conduct and the statement." *Ramirez*, 15 So. 3d at 855-56. Moreover, although some promises may require suppression, "an interrogating officer may, without rendering a confession involuntary, promise to make a suspect's cooperation known to the prosecutor or advise the suspect that 'it would be easier on him' if he cooperated." *Id.* at 856 (quoting *Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007)); *see Caraballo*, 39 So. 3d at 1247. In *Caraballo,* the supreme court noted that the facts of *Ramirez* regarding the offers of help by law enforcement were "much more excessive" than the facts surrounding Caraballo's confession and

2

did not require reversal of the trial court's ruling admitting the statements. 39 So. 3d at 1247. Here, the investigator's offers to inform the prosecutor that Appellant cooperated were not excessive and not similar to the "unique circumstances" this court described in *Ramirez*. 15 So. 3d at 857.

Appellant also argues that his confession was involuntary, because he had met the investigator years earlier, when Appellant was himself a victim of sexual abuse. Appellant asserts that the bond of trust established by that encounter lowered his resistance to threats, promises, and misrepresentations of law.

In *Spano v. New York*, 360 U.S. 315, 319 (1959), law enforcement officers ordered a defendant's close childhood friend to use false pretenses to encourage the defendant to confess. The officers kept sending the friend in to "play on [the defendant]'s sympathies" until the defendant finally confessed after eight straight hours of questioning. *Id.* The Supreme Court held that the use of the friend was a factor in determining that the confession was involuntary, observing that "[t]here was a bond of friendship between them going back a decade into adolescence. It was with this material that the officers felt that they could overcome [the defendant]'s will." *Id.* at 323.

Here, the investigator, who was not Appellant's close childhood friend, informed Appellant that the purpose of the interview was to investigate the alleged sexual offenses. It was Appellant, not the investigator, who first brought up the past encounter, stating that he regretted refusing the investigator's offer of psychological counseling years ago. The investigator then essentially minimized that past encounter and returned to the instant allegations, telling Appellant, "Well, we're all indestructible when we're young, and then we have to grow up, and we have to mature. So [the victim] is not telling lies; is she?"

The investigator did not manipulate the encounter to exploit Appellant or diminish his ability to decline to answer questions. While later in the interview the investigator offered to help Appellant get counseling assistance, he did so only *after* Appellant confessed: When Appellant finished describing the incidents of molestation, the investigator said, "All right. I want to get you that help, but I do have to arrest you. Okay?" The investigator never

3

suggested that this post-confession offer was contingent on getting anything in return from Appellant. Thus, the offer did not *induce* the confession.*

Appellant also asserts that the investigator's remarks regarding allegations that Appellant's wife told the victim to lie to police improperly induced his confession. After describing the seriousness of the allegations against Appellant's wife, the investigator told Appellant, "It's very damaging that three people heard, two people heard and [the victim] confirms that [your wife] said to lie to the investigator." The investigator then told Appellant:

> That's what you and [your wife] are facing, because y'all are not telling me the truth. You're telling part of the truth, but you're not telling the whole truth. *And I think you can tell me the truth to keep her out of trouble.* I'm not after her. I want to leave her out. The kids [have] got to have somebody. . . .
>
> So what I'm throwing out to you and [your wife] is we can continue with this lie, but . . . [i]f y'all don't tell me the truth today I have no choice but to type my paperwork and file charges on both of y'all.

(Emphasis added.) Shortly thereafter, Appellant stopped denying the allegations against him.

Although the State argues that these comments were merely asking for information that might exonerate Appellant's wife, a plain reading of the transcript indicates an implied promise: Confess to the allegations and the charges against Appellant's wife

---

* At the end of the interview, the investigator did ask Appellant if anything had been promised "to make you tell these statements---" and Appellant replied "No, sir. . . . Other than getting me help." The investigator then acknowledged Appellant's assertion. Without context, this acknowledgement suggests that a *quid pro quo* promise was made. The transcript itself, however, refutes that interpretation, as the offer was made *after* Appellant confessed.

4

will go away and one parent will remain home. But the record does not support a conclusion that these statements rendered Appellant's confession involuntary. *Johnson v. State,* 696 So. 2d 326, 331 (Fla. 1997) (finding preponderance of evidence sufficient to demonstrate voluntariness of confession). Appellant never expressed any fear or concern about what would happen to his wife or children if he did not admit to the sexual acts with his stepdaughter.

At the end of the interview, when the investigator asked if any promises were made in exchange for the confession, Appellant made no mention of leniency for his wife. Appellant was given an opportunity to say that he confessed in hopes of protecting his wife, but instead, he only asked for counseling help. Accordingly, we reject Appellant's arguments that his confession was involuntarily obtained.

## II. *The Excluded Evidence*

Appellant argues that the trial court erred in granting the State's motion in limine to exclude evidence of the victim's sexual relationship with her boyfriend. A proffer of the evidence being excluded is necessary to preserve a claim of improperly excluded evidence "because an appellate court will not otherwise speculate about the admissibility of such evidence." *Lucas v. State*, 568 So. 2d 18, 22 (Fla. 1990); *see also Goodwin v. State,* 751 So. 2d 537, 544 (Fla. 1999) ("if it is alleged that evidence has been improperly excluded and the appellate record does not establish that a proffer has been made, the lack of an adequate record will be grounds to affirm.").

Florida's rape shield law bars the admission of evidence of consensual sexual activity between a victim and any person other than the accused, unless it is established in camera that the evidence is relevant to consent by a similar pattern of conduct, or that the accused is not the source of semen, pregnancy, injury, or disease. § 794.022, Fla. Stat.; *Gomez v. State*, 245 So. 3d 950, 953 (Fla. 4th DCA 2018). The rape shield law does not exclude evidence that would otherwise be admissible under the Florida Evidence Code; instead, section 794.022 is a codification of Florida's relevance rules as applied to the sexual behavior of victims of sexual crimes. *Carlyle v. State*, 945 So. 3d 540, 546 (Fla.

5

2d DCA 2006); *Kaplan v. State*, 451 So. 2d 1386, 1387 (Fla. 4th DCA 1984); *see also* § 90.403, Fla. Stat.

A defendant's "right to full and fair cross-examination, guaranteed by the Sixth Amendment, may limit [section 794.022]'s application when evidence of the victim's prior sexual conduct is relevant to show bias or motive to lie." *Kaplan*, 451 So. 2d at 1387; *see also Lewis v. State*, 591 So. 2d 922, 923 (Fla. 1991) (holding that the defendant's right to a full and fair defense was infringed where the victim's consensual sexual relationship with a third person was relevant). In *Lewis*, 591 So. 2d at 923, the defense proffered evidence that the minor victim was concealing her consensual sexual activity from her mother, and that a scheduled medical examination would have revealed the concealment. The supreme court held that this proffered evidence was admissible as highly probative to the defense theory that the victim fabricated rape charges against the defendant in order to avoid being caught in a lie about having sex with her boyfriend. *Id.*

Here, there was no proffer of evidence at trial, so the question is whether there is an adequate record of the excluded evidence to put the trial court on notice of the potential error. *See Goodwin*, 751 So. 2d at 544.

At the hearing on the State's motion in limine, defense counsel mentioned that a family member believed the victim "made the allegations up because [she] and her boyfriend got caught doing what they weren't supposed to be doing" and he "might want to go into that" at trial. Defense counsel generally agreed that the victim's chastity should not be discussed, but asserted:

> [A]t the same time we need to explore the motive of possibly of why – again, why [the victim] is making these allegations and it might have something to do with her boyfriend. So again, I haven't deposed [the victim] yet, so I'm going to address some of this in depositions and flesh it out.
>
> But I think that – right, attacking her chastity, that's improper, but the nature of the relationship with her boyfriend, [Appellant's] approval of it, I think that could

6

explain as part of a possible motive for her making these accusations.

No mention was made of the victim hiding her sexual relationship or that an upcoming medical examination would uncover such; the excluded evidence was that Appellant caught the victim with her boyfriend in an inappropriate behavior. But without additional facts such as those in *Lewis*, where the sexual nature of the victim's relationship with her boyfriend was critical to the theory of defense, here the probative value of the minor victim's sexual activity is substantially outweighed by the risk of unfair prejudice and is precluded from admission under section 794.022, Florida Statutes. Therefore, the trial court did not abuse its discretion in excluding the evidence.

We note that our review is limited to the facts presented at the motion in limine hearing. Although defense counsel surmised at the hearing that upcoming depositions might produce additional relevant information, this does not constitute an "adequate record" sufficient to put the trial court on notice that the as-yet-unknown evidence would be admissible at trial. *See Goodwin*, 751 So. 2d at 544; *Lucas*, 568 So. 2d at 22.

AFFIRMED.

KELSEY, J., concurs; WINOKUR, J., concurs with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

WINOKUR, J., concurring.

While I agree with the majority that we should affirm the conviction below, I write to expand upon the effect that "promises" from police to a suspect during an interrogation have on a confession's admissibility. I believe we should emphasize that a promise only renders a confession involuntary and inadmissible

7

when the promise overbears the free will of a suspect to choose whether to confess. "The test to determine whether a confession is voluntary—in other words, not coerced—is whether it was the product of free will and rational choice." *Martin v. State*, 107 So. 3d 281, 298, 315 (Fla. 2012) (deciding whether officers' interrogation tactics "overbore [the suspect's] free will such that he was unable to make a rationale choice with regard to confessing"). The mere existence of a promise by the officer or a "quid pro quo" agreement between the officer and suspect does not, in itself, render the confession involuntary. I question the continuing viability of cases suggesting that it does.

The standard to determine whether a confession is voluntary is well-settled: "In order for a confession to be voluntary, the totality of the circumstances must indicate that such confession is the result of free and rational choice." *Blake v. State*, 972 So. 2d 839, 843–44 (Fla. 2007) (quoting *Johnson v. State*, 696 So. 2d 326, 329 (Fla. 1997)). This standard focuses on the suspect's state of mind, specifically on the effect that any particular police tactic during interrogation has upon the suspect.[1] In other words, the mere existence of a promise alone, even a "quid pro quo"

---

[1] Of course, Teachman never testified that his will was overborne by officer promises. The Maryland Court of Appeals addressed this point in *Lee v. State*, 12 A.3d 1238, 1253 (Md. 2011) (citation omitted):

> To be sure, the State has the burden to prove voluntariness. We cannot help but note, nonetheless, that Petitioner did not testify at the suppression hearing. Therefore, we do not have even his word that [the officer's] improper comment overbore his will and produced his confession. . . . [A] mere promise, whether it be of leniency or, as here, confidentiality, without more, will not render a confession involuntary, for federal (or state) constitutional purposes.

The same is true here. Teachman details numerous allegations of promises and threats issued by Detective Musgrove, but presents only conjecture that these promises and threats overbore his will to make a rational choice.

agreement, should not render any confession involuntary. *See Miller v. Fenton*, 796 F.2d 598, 608 (3d Cir. 1986) (holding that "it does not matter that the accused confessed because of the promise, so long as the promise did not overbear his will.").

A different line of cases suggests otherwise, holding that a promise alone may render a confession involuntary. These cases stem from *Bram v. United States*, 168 U.S. 532, 542–43 (1897), which held that a confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." The United States Supreme Court has repudiated this rule from *Bram*, s*ee Arizona v. Fulminante*, 499 U.S. 279, 285 (1991) (holding that this statement from *Bram* "does not state the standard for determining the voluntariness of a confession"), which the Florida Supreme Court has acknowledged. *See Martin*, 107 So. 3d at 313–14. Nonetheless, some Florida cases continue to follow the rejected rule that a confession "obtained by any direct or implied promises" is *per se* involuntary, including *Ramirez v. State*, 15 So. 3d 852 (Fla. 1st DCA 2009), cited in the majority opinion. *See id.* at 855 ("It is well-settled that statements obtained through direct or implied promises are involuntary and, thus, inadmissible at trial."). *See also Walker v. State*, 771 So. 2d 573, 575 (Fla. 1st DCA 2000) ("A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight."). To the contrary, a promise to a suspect unaccompanied by a showing that the promise overbore the suspect's will does not render a confession involuntary.[2] The suggestion that any promise that induces a confession

---

[2] This observation applies equally to the oft-stated rule that any "quid pro quo" agreement between the police and the suspect automatically renders a confession involuntary. *See, e.g., Ramirez*, 15 So. 3d at 856 ("the presence of an express 'quid pro quo' bargain for a confession will render the confession involuntary as a matter of law"). The "express quid pro quo" rule directly contradicts the proper voluntariness rule, which looks at the totality of the circumstances to determine whether police misconduct overbore the suspect's free will and made it impossible for the defendant to make a rational choice as to whether to confess.

automatically renders a confession involuntary, no matter how inconsequential and no matter whether it deprived the defendant of the ability to make a rational choice, should be finally and explicitly rejected.

_____

Andy Thomas, Public Defender, Kathryn Lane, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Kaitlin Weiss, Assistant Attorney General, Tallahassee, for Appellee.