DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALTON D. JOHNSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1084

[April 17, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 50-2016-CF-001854-AXXX-WB.

Carey Haughwout, Public Defender, and Nancy Jack, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

The issue in this case is whether the interrogating officer's statements and constant requests imploring appellant to invoke self-defense made appellant's eventual confession involuntary, and whether consequently the officer gave appellant an "unrealistic hope" as to the viability of invoking self-defense. We find that, when considering the "totality of circumstances," appellant did not understand his "true position" based on the officer's numerous statements, some of which seemingly condoned appellant's actions. Thus, we find the confession was involuntary and inadmissible. As to the other arguments raised, we find them to be without merit; however, based on the admission of the involuntary confession, we reverse appellant's convictions for two counts of second-degree murder, shooting into an occupied vehicle, and being a felon in possession of a firearm.

Belle Glade police responded to a "Shot Spotter" alert. Upon arrival at the scene, the police discovered the two victims shot dead in their vehicle. Both victims had multiple gunshot wounds and the car had bullet holes

and shattered windows. The medical examiner determined that the cause of death for both victims was multiple rifle wounds and that the manner of death was homicide. The victims' injuries were consistent with someone shooting them from behind with an assault rifle. The shooter had not been in close proximity to the victims.

During an interview with police, appellant eventually admitted to committing the shooting in self-defense. Appellant provided the police with the assault rifle he used, an AR-15. A firearm examiner determined that seventeen casings recovered at the crime scene had been fired by appellant's rifle.

Appellant moved to suppress his confession. The trial court denied the motion. Appellant was convicted at trial and this appeal ensued.

We review a trial court's ruling on a motion to suppress by giving the decision of the trial court "a presumption of correctness to the historical facts" but review de novo the application of the law to the historical facts. *Rigterink v. State*, 66 So. 3d 866, 884 (Fla. 2011).

Appellant argues that the trial court erred in denying the motion to suppress since the officer repeatedly asked him to invoke self-defense and stated that such an invocation would insulate him from prosecution. The state responds that the officer never made a specific promise to induce the confession.

"The due process clause of the Fourteenth Amendment to the U.S. Constitution 'prohibits the states from using the coerced confession of an accused against him.'" *Martin v. State*, 107 So. 3d 281, 298 (Fla. 2012) (quoting *Brewer v. State*, 386 So. 2d 232, 235 (Fla. 1980)). The totality of the circumstances test applies to determine whether a confession was coerced. *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991). A confession is inadmissible where it is the product of improper "fruits of hope." *Day v. State*, 29 So. 3d 1178, 1182 (Fla. 4th DCA 2010) (citation omitted).

Although the officer never directly or specifically made any promise to appellant, when reading the entire interrogation it is clear the officer made numerous statements giving appellant the clear impression that admitting to shooting the two victims in "self-defense" would be appellant's "only out." Further, a direct and explicit promise is not required for the actions of law enforcement to render a confession involuntary.

> While the presence of an express "quid pro quo" bargain for a confession will render the confession involuntary as a matter

of law, *see Walker* [*v. State*], 771 So. 2d [573,] 575 [(Fla. 1st DCA 2000)], it is not correct to say that the absence of an express "quid pro quo" bargain insulates police misconduct from claims of undue influence or coercion. The test for determining whether a particular confession or statement is involuntary is still whether, in considering the totality of the circumstances, the reviewing court can conclude that the **defendant was unable to make a choice free from unrealistic hope and delusions as to his true position**, **due to the officer's conduct**. *Walker*, 771 So. 2d at 575.

*Ramirez v. State*, 15 So. 3d 852, 856 (Fla. 1st DCA 2009) (emphasis added).

Appellant's "unrealistic hope and delusions as to his true position" were constantly fueled by the officer during the interrogation. In this case, appellant at first claimed to be at his father's house and not at the scene of the shooting. The officer told appellant, "Self-defense. That's basically your only out in this. It really is. . . . [A]ny other excuse, of course is no good. But if you said it's self-defense, it's hard for me to say otherwise. Do you understand what I'm saying?" The officer went on to point out that the two victims had guns on them: "So if you felt like they were going to come after you, you got to take care of yourself first, right?" The officer continued to press invoking self-defense when he said,

> [R]ight now is your only opportunity, because after—if—if and when you are charged for this, you're not going to be able to come up with that defense again, because you were given the opportunity now and no one will believe you. If you say now it was f-----g self-defense, then you're—you know you got a chance.

The officer continued by once again stating,

> It's your only out. Because when—when and if—when this goes to trial, you know, you—you can stand and argue right now, I told the detective it was self-defense; but you can't— from this point on, you're never going to be able to say that. You can say it, but no one is going to believe you.

When appellant expressed a concern about going to jail if he admitted to shooting in self-defense, the officer responded, "No, you're not going to jail for that. Are you kidding me?"

The officer also reminded appellant that the two victims had guns and

they had threatened appellant before. The officer then stated, "So you—you went, you got your rifle and you took care of business because instead of you getting killed or anyone you love getting killed, you took the problem out." When appellant asked the officer what the officer would do if he was threatened, the officer responded, "S--t, if you threatened me, I would blow you away."

Finally, the officer explained,

> I'm going to present the f-----g case to the State and say, listen the guy is saying—when someone claims self-defense—look at me—when someone claims self-defense, unless I have overwhelming evidence that it wasn't, **I can't arrest you.** The law protects people—you've heard of the stand your ground law, all these—a lot of people are—are—well, protecting themselves and they're not going to jail. Because in this country, you have the right to protect yourself.

(emphasis added). The officer concluded, "Were you protecting yourself? I don't blame you, man."

Only after the numerous statements by the officer outlined above did appellant finally acquiesce and agree to invoke self-defense and admit to being at the scene of the shooting. Appellant stated that the night before the fatal shooting, one of the victims shot at him, whereupon appellant fired back. Appellant admitted that the next day, the same victim approached appellant with a gun. After they exchanged words, appellant left to retrieve a rifle and returned to the scene where he shot the victims. The medical examiner confirmed that the victims were shot from behind with an assault rifle and that the shooter has not been in close proximity to the victims.

Appellant confessed under clear "unrealistic hope and delusions as to his true position." *Ramirez*, 15 So. 3d at 856. The fact that appellant left the scene, returned armed, and shot the victims in the back multiple times from a distance while the victims were sitting in a parked car would mitigate against invoking self-defense on the day of the fatal shooting. *See Spires v. State*, 180 So. 3d 1175, 1179 (Fla. 3d DCA 2015) (finding no Stand Your Ground immunity where defendant shot victim as victim turned to get into car and victim died from four gunshot wounds to his back); *Phippen v. State*, 389 So. 2d 991, 993-94 (Fla. 1980) (finding sufficient evidence to sustain murder conviction where defendant shot victims multiple times in the back); *McJimsey v. State*, 31 So. 3d 797, 798 (Fla. 4th DCA 2009) (characterizing self-defense claim as "weak" where

4

defendant sustained no visible injuries, defendant returned to another room to retrieve a knife, and defendant stabbed the victim multiple times in the back and abdomen). But, based on the continued statements by the officer, appellant had an unrealistic view of the viability of such a defense.

Significantly, several times during the exchange, the officer gave incorrect appraisals of the law that misled appellant to believe that the law supported his actions on that day. Unlike misrepresentations of fact, which generally "are not enough to render a suspect's ensuing confession involuntary," "[p]olice misrepresentations of law . . . are much more likely to render a suspect's confession involuntary." *Baptiste v. State*, 179 So. 3d 502, 506 (Fla. 1st DCA 2015) (citation omitted). In *Baptiste*, police officers arrested the defendant upon belief that he had committed armed robbery. The officers repeatedly encouraged the defendant to confess, but he refused. The defendant confessed only after the officers misrepresented the law and told the defendant he could not be charged with armed robbery with a deadly weapon if he confessed to committing the robbery using a BB gun. Similarly, in *Light v. State*, 20 So. 3d 939 (Fla. 1st DCA 2009), the police interrogated the defendant for unlawful sexual activity with minors. The defendant confessed only after the police misrepresented the law concerning the age of consent as sixteen rather than eighteen. *Id.* at 941. In both those cases, as in the instant case, the misrepresentation of law rendered the defendants' confessions involuntary.

In this case, the officer misrepresented the law to appellant on several occasions, for example by stating that appellant would not "be able to come up with that defense again," when in reality appellant was not foreclosed from invoking self-defense later in the process up until a potential trial. *See Ivey v. State*, 586 So. 2d 1230, 1234 (Fla. 1st DCA 1991) (noting that defendant raised theory of self-defense for the first time at trial). The officer also incorrectly stated that he could not arrest appellant without "overwhelming evidence" that appellant did not act in self-defense when in fact the correct standard was probable cause. *See* § 776.032(2), Fla. Stat. (2016) ("[T]he agency may not arrest the person for using or threatening to use force unless it determines that there is probable cause that the force that was used or threatened was unlawful.").

In summary, we find that the officer's misrepresentations of the law coupled with constant misrepresentations regarding appellant's position rendered appellant's confession involuntary and consequently inadmissible. An officer should not misrepresent the law and repeatedly make statements that foster "unrealistic hope and delusions to [a defendant's] true position." Accordingly, we reverse and remand.

*Reversed and remanded.*

WARNER and GROSS, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**