# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————

Case No. 5D22-1890
LT Case No. 2017-CF-051466-A

————————————————

JOSEPH BLOW,

     Appellant,

     v.

STATE OF FLORIDA,

     Appellee.

————————————————

On appeal from the Circuit Court for Brevard County.
Tesha Ballou, Judge.

Matthew J. Metz, Public Defender, and Joshua T. Mosley and George D. E. Burden, Assistant Public Defenders, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, Tallahassee and Deborah Chance, Assistant Attorney General, Daytona Beach, for Appellee.

September 29, 2023

SOUD, J.

Appellant Joseph Blow appeals his convictions for sexual battery and trespass and his resulting ten-year prison sentence. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm, holding that while the trial court erred in excluding Appellant's testimony of two alleged previous

consensual sexual encounters with the victim, such error was harmless.

I.

Appellant was charged with burglary of a dwelling with assault or battery, a first-degree felony punishable by life in prison, and sexual battery, under section 794.011, Florida Statutes, a second-degree felony. It was alleged that during the middle of the night Appellant entered the victim's residence she shared with her boyfriend, stealthily made his way to her bedroom where she was sleeping, sexually battered the victim, and then left the residence.

The victim testified that she was sleeping on her stomach and was awakened when the sheets were pulled off her. Believing it was her boyfriend, she allowed intercourse. However, when the person believed to be her boyfriend did not return to the bedroom, the victim got up and found her boyfriend asleep on the couch, where he had been the entire time. After confirming her boyfriend did not have intercourse with her, the distraught victim called 911.

As part of law enforcement's investigation, Appellant's DNA was found inside of the victim's body. Thereafter, Appellant was arrested, interviewed by detectives, and ultimately charged.

During his recorded interview, when asked if he recalled anything about sexual battery on the night in question, Appellant initially told detectives that he did not recall anything at all and that he "wasn't there." Later he claimed "she [the victim] owed me money" because "this lady [the victim, known to him as "Bigs"] does drugs." When a detective attempted to ask further questions about this statement, Appellant recanted, saying he thought "Bigs" was talking about "something else" and reiterated numerous times he "wasn't there" at the victim's residence. Appellant later claimed this same lady gave him manual stimulation but that he never went to her house.

After repeated questioning by detectives about whether he mistakenly went to the wrong apartment and entered the victim's residence instead of her neighbor's residence, Appellant claimed to

2

not remember anything but said "I guess it happened." Thereafter, he told the detectives:

> Detective: Are you sorry that it happened?
>
> Appellant: Yes, ma'am, I am.
>
> Detective: Okay. So if she were right here right now what would you tell her?
>
> Appellant: Tell her so much man. I felt so bad. I'd give all this up. I'd give it all up.

At no time did Appellant claim he had consensual intercourse with the victim—even when told that his DNA was found in the body of the victim.

At trial, Appellant's defense was that the victim consented to the sexual intercourse. He testified on his own behalf, claiming that he met the victim approximately a month and a half before the night in question and that he had consensual intercourse with the victim that night in exchange for Percocet tablets. The trial court prohibited Appellant from testifying that he had twice before engaged in sexual intercourse with the victim in exchange for drugs.

The jury returned a verdict of guilty of lesser-included offenses of battery and trespass on Count I[1] and guilty of sexual battery as charged in Count II. Appellant was sentenced to ten years in prison on Count II and sixty days in jail on the lesser-included trespass. This appeal followed.

## II.

Appellant argues the trial court reversibly erred by excluding Appellant's testimony of his alleged two consensual sexual encounters with the victim prior to the night of the sexual battery

---

[1] Based upon double jeopardy principles, the trial court vacated the guilty verdict on the lesser-included battery.

charged. While Appellant is correct the trial court erred, we hold such error was harmless.

## A.

### 1.

The trial court's ruling excluding Appellant's testimony of two alleged prior consensual sexual encounters will not be reversed unless the trial court's decision constitutes an abuse of discretion. *See Song v. Jenkins*, 48 Fla. L. Weekly D665 (Fla. 5th DCA Mar. 31, 2023) (quoting *McCray v. State*, 919 So. 3d 647, 649 (Fla. 1st DCA 2006)). However, the trial court's exercise of its discretion over such evidentiary matters is restrained by the Florida Evidence Code and the applicable case law. *Thorne v. State*, 271 So. 3d 177, 183 (Fla. 1st DCA 2019); *see also Johnson v. State*, 863 So. 2d 271, 278 (Fla. 2003) ("The trial court's discretion is limited by the rules of evidence."). The trial court's interpretation of those authorities is subject to *de novo* review. *Thorne*, 271 So. 3d at 183.

### 2.

Our analysis starts at the beginning. All relevant evidence is admissible unless such evidence is excluded by law, *see* § 90.402, Fla. Stat. (2022), such as when the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, *see* § 90.403, Fla. Stat., or is otherwise excluded by the Florida Evidence Code. Relevant evidence is defined as that tending to prove or disprove a material fact. *See* § 90.401, Fla. Stat.

Chapter 794 governs the crime of sexual battery. Section 794.022, Florida Statutes, sets forth rules of evidence designed to "protect[] a sexual battery victim's privacy from unwarranted public intrusion by restricting the admissibility of evidence relating to the victim['s] character and prior consensual sexual activity." C. Ehrhardt, *Florida Evidence* § 404.7 (2023 ed.). Section 794.022 is often referred to as the "rape shield" statute.

"The rape shield law does not exclude evidence that would otherwise be admissible under the Florida Evidence Code; instead, section 794.022 is a codification of Florida's relevance rules as applied to the sexual behavior of victims of sexual crimes." *Thorne*,

271 So. 3d at 183 (quoting *Teachman v. State*, 264 So. 3d 242, 246 (Fla. 1st DCA 2019)).

Florida's rape shield law provides in part:

> Specific instances of prior *consensual* sexual activity between the victim and *any person other than the offender* may not be admitted into evidence in a prosecution under s. 787.06, s. 794.011, or s. 800.04. However, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence may prove that the defendant was not the source of the semen, pregnancy, injury, or disease; or, when consent by the victim is at issue, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence tends to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent.

§ 794.022(2), Fla. Stat. (emphasis added). The plain text of the statute makes clear that the instances of a victim's prior sexual history excluded from evidence are those that are (i) consensual and (ii) between the victim and any person other than the defendant on trial. *See Gomez v. State*, 245 So. 3d 950, 953 (Fla. 4th DCA 2018); *McLean v. State*, 754 So. 2d 176, 182 (Fla. 2d DCA 2000) ("The Rape Shield Statute . . . prohibits evidence of specific instances of prior consensual activity between the victim and any person other than the offender in sexual battery cases.").

In the case *sub judice*, Appellant's defense at trial was consent. While he properly was permitted to testify as to the purported arrangement between him and the victim on the night in question—that is, the victim consented to sexual intercourse in exchange for Percocet pills—he was not permitted to testify that he and the victim engaged in sex on two prior occasions on the same terms. Such testimony is relevant as it tended to prove his asserted defense.

Further, such testimony of the two alleged prior encounters is not excluded from evidence by the rape shield statute. This testimony concerned alleged consensual sexual activity of the victim *with Appellant,* not "any person other than" Appellant as expressly contemplated by the rape shield law. *See* § 794.022(2), Fla. Stat.[2] Since the testimony concerning the two alleged prior encounters between the victim and Appellant was relevant and not excluded by the Florida Evidence Code or the rape shield statute, the trial court's exclusion of this testimony was error.[3]

B.

The State argues, however, that any error in this regard was harmless. As the beneficiary of the error, the State has the burden to demonstrate beyond a reasonable doubt that the error was harmless. *State v. DiGuilio,* 491 So. 2d 1129 (Fla. 1986).

To determine whether an error is harmless, this Court must review the entire record, including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the excluded

---

[2] Since Appellant's testimony concerns alleged prior sexual activity of the victim with Appellant and not another individual, the two exceptions within section 794.022(2) do not apply to this case and need not be considered.

[3] Even if the rape shield were to apply, the Florida Supreme Court has considered the reach of the rape shield statute when it hinders a defendant's constitutional right to present a full and fair defense and determined

> a victim of a sexual assault should not be subjected to having her sexual history brought up in open court, but . . . where . . . application of this rule interferes with confrontation rights, or otherwise precludes a defendant from presenting a full and fair defense, the rule must give way to the defendant's constitutional rights.

*Lewis v. State,* 591 So. 2d 922, 925 (Fla. 1991).

evidence which might have possibly influenced the jury verdict. *See id.*

> Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. *The focus is on the effect of the error on the trier-of-fact.* The question is *whether there is a reasonable possibility that the error affected the verdict.* The burden to show the error was harmless must remain on the state. If the appellate court cannot say *beyond a reasonable doubt* that the error did not affect the verdict, then the error is by definition harmful.

*Id.* at 1139 (emphasis added).

Having reviewed the record before us, we conclude the State has met its burden and established beyond a reasonable doubt that the error was harmless. There exists no reasonable possibility the error affected the jury's verdict.

Given Appellant's defense that the victim consented to the intercourse in exchange for Percocet pills, the jury was called upon to resolve the conflicting accounts. To do so, the central question for the jury was the credibility of the victim versus the credibility of Appellant. In its closing argument, the State encouraged the jury to compare the victim's testimony with her 911 call and to likewise compare Appellant's testimony to his recorded interview with detectives.

The victim's testimony before the jury was that she was raped in her bedroom by an unknown person who was not her boyfriend. Her testimony is substantially the same as reflected in her 911 call, during which the victim was highly emotional and, at times, sobbing. The substance of her statements to the dispatcher, together with the circumstances and her mental state during the call, were before the jury.

In sharp contrast, Appellant's testimony differed wildly from his interview with detectives. Having chosen to speak to law enforcement officers and waive his Miranda rights, he never told

7

detectives that the victim consented. Indeed, he vacillated between claims that (i) the victim owed him money, (ii) he in fact knew her as Bigs, (iii) he did not even know the victim, (iv) he was not familiar with her residence, (v) nothing sexual happened, and (vi) the victim manually stimulated him (but not at her residence). He further told detectives, upon their questioning, (vii) "I guess it happened." When asked if he was sorry it happened, Appellant said (viii) "Yes, ma'am, I am." If given the opportunity to talk with the victim, Appellant indicated he would (ix) "Tell her so much man. I felt so bad. I'd give all this up. I'd give it all up."

At trial Appellant's defense was based entirely upon his own testimony—and, thus, would rise or fall depending upon the credibility the jury afforded his testimony. Appellant testified that he had known the victim for about a month and a half, had met her twice previously, including a "meeting" at her apartment (though she kept him away from her boyfriend),[4] and then testified to his version of what occurred on the night in question: "hurried" sexual intercourse after being invited into the apartment, and that he left the victim one and a half Percocet pills. Appellant also acknowledged before the jury that he was a four-time convicted felon, which is pertinent to the jury's consideration of the credibility to be afforded his testimony,[5] and that he had been drinking the day of the encounter with the victim.

While Appellant was erroneously prohibited from testifying that this occurred on two prior occasions, Appellant's brief proffer makes clear the excluded testimony would have been quite limited. In his proffer, Appellant admitted he sold drugs. His intended testimony as to the prior encounters would have included only that it occurred twice in the approximately month and a half he knew the victim, once at a park and once at the victim's apartment, and that the arrangement was the same as he alleged existed on the night in question—sex in exchange for Percocet pills. Appellant was unable to provide any information as to specifically when

---

[4] This testimony seems to imply to the jury the reason the victim would have kept Appellant away from her boyfriend while "meeting" Appellant in her apartment.

[5] *See* Fla. Std. Jury Instr. (Crim.) 3.9.

these alleged prior encounters occurred. There was no additional witness or other corroborating evidence of consent excluded by the trial court's ruling.

Had the proffered testimony been admitted, the jury would have been faced with the same question: the credibility of the victim's accusation of rape and that of Appellant's claim of consent. And they would have been left with the same evidence to consider in making their determination: the substance of each's testimony, the victim's 911 call, and Appellant's recorded interview with detectives.

Simply stated, Appellant's consent defense depended entirely on his own testimony. Given the substantial conflict between Appellant's trial testimony and his interview with detectives, together with his four prior felony convictions, the record makes plain that Appellant's credibility before the jury was severely diminished. Considering the very limited nature of the proffered testimony in this context, there is no reasonable possibility that the error affected the jury's verdict. Therefore, the verdict should remain undisturbed.

### III.

Accordingly, as the trial court's error in excluding Appellant's testimony of two alleged prior consensual encounters with the victim was harmless, the judgment and sentence is AFFIRMED.

It is so ordered.

KILBANE, J., concurs.
LAMBERT, J., concurs in part and dissents in part with opinion.

9

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

LAMBERT, J., concurring, in part, and dissenting, in part.

I concur with the majority's analysis and opinion that the trial court erred when it applied Florida's rape shield law to exclude testimony regarding the two alleged prior acts of consensual sexual activity between Appellant and the victim.

The dispositive question in this appeal is whether this evidentiary error committed by the trial court was harmless. In other words, whether the State has met its burden to establish, beyond a reasonable doubt, that this error "did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *DiGuilio*, 491 So. 2d at 1135.

I acknowledge the trial evidence of the victim's 911 call and that during his interview with law enforcement, Appellant did not discuss any prior consensual sexual activity with the victim and initially denied being present at the victim's residence. That said, evidence of two similar and recent consensual sexual encounters with the victim goes directly to and significantly strengthens Appellant's sole defense that the incident that resulted in his conviction was similarly consensual. By limiting Appellant to testifying that he and the victim had previously "met" and thus, according to Appellant, mischaracterizing the extent of their prior relationship, the jurors were without a material piece of information to consider during their deliberations. Instead, they were left with the victim testifying that this one-time occurrence was not consensual, with Appellant testifying that it was. Moreover, the trial court's ruling impacted Appellant's constitutional right of confrontation under the Sixth Amendment as it prevented his cross-examination of the State's key witness about their alleged prior consensual sexual activities.

Applying the language of *DiGuilio*, 491 So. 2d at 1139 ("The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition

11

harmful."), and based upon my review of the record, I cannot conclude, beyond a reasonable doubt, that the State has met its burden to show that the trial court's error in excluding testimony about prior, similar consensual activity between Appellant and the victim did not affect the verdict. Accordingly, I respectfully dissent.